1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

SUBHAM SUBHAM,

9
                              Petitioner,

10
       v.

11
KRISTI NOEM, et al, *et al.*,

12
                              Respondents.

13

Case No. C26-292-SKV

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS

14          Petitioner Subham Subham is currently detained by U.S. Immigration and Customs

15   Enforcement ("ICE") at the Northwest ICE Processing Center in Tacoma, Washington

16   ("NWIPC").  Petitioner, through counsel, filed a petition for writ of habeas corpus under 28

17   U.S.C. § 2241 in which he asserts that his re-detention after release from custody on an order of

18   release on recognizance violates his constitutional right to due process under the Fifth

19   Amendment to the United States Constitution.  *See* Dkt. 1 at 10.  Respondents have filed a return

20   (Dkt. 5), together with the supporting declarations of ICE Deportation Officer Yralees Melendez

21   (Dkt. 6) and Respondents' counsel Lawrence Van Daley (Dkt. 7).  Petitioner has filed a traverse

22   in response to the return.  Dkt. 8.

23

The Court, having reviewed the parties' submissions and the governing law, finds that Respondents' re-detention of Petitioner, without prior notice or an opportunity to be heard, violated his constitutional right to due process.  Accordingly, the Court GRANTS Petitioner's federal habeas petition, ORDERS his immediate release from custody under the same conditions previously imposed, and further ORDERS that he may not be re-detained without first being provided adequate notice of the grounds for his re-detention and a hearing before a neutral decisionmaker.

## I.    BACKGROUND

Petitioner is a native and citizen of India.  *See* Melendez Decl., ¶ 3; Van Daley Decl., Ex. 1.  Petitioner entered the United States on March 28, 2023.  *See id.*  On March 30, 2023, United States Border Patrol issued a Notice to Appear ("NTA") placing Petitioner in removal proceedings, alleging he was subject to removal pursuant to "212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended."  Melendez Decl., ¶ 5; Van Daley Decl., Ex. 1.  Petitioner was ordered to appear before an immigration judge ("IJ") in New York on August 1, 2023.  *See id.*  On March 31, 2023, Petitioner was released on an Order of Release on Recognizance ("OREC") "[i]n accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations."  Melendez Decl., ¶ 6; Van Daley Decl., Ex. 3.

On April 20, 2023, ICE's Office of Enforcement and Removal Operations apparently issued a new NTA, which retained the charge of removability and again scheduled Petitioner to appear before an IJ in New York.[1]  Melendez Decl., ¶ 7.  On July 31, 2023, Petitioner failed to appear for his scheduled immigration hearing and the IJ ordered Petitioner be removed to India

---

[1] Respondents offer no explanation for why a new NTA was issued less than a month after the initial NTA was issued.

1    *in absentia*.  *Id.*, ¶ 8.  Petitioner thereafter filed a timely motion to reopen his removal

2    proceedings, which was granted by the IJ, and his case was subsequently transferred to

3    California after he changed his address with the immigration court.  *Id.*, ¶ 9.  Petitioner filed an

4    application for asylum with the immigration court in September 2023, which apparently remains

5    pending.  *See id.*, ¶ 10; Van Daley Decl., Ex. 2 at 3.

6        On December 9, 2025, while operating a commercial vehicle along the I-90 corridor in

7    Montana, Petitioner stopped for a commercial vehicle inspection at the St. Regis Weigh Station.

8    *See* Van Daley Decl., Ex. 2 at 3.  During the inspection, Petitioner presented an Employment

9    Authorization Document ("EAD"), and weigh station personnel thereafter contacted law

10   enforcement.  *Id.*  At that time, the Montana Highway Patrol Criminal Interdiction Team and

11   United States Border Patrol were conducting a joint operation "focused on identifying narcotics

12   and human smuggling activities" in the area.  *See id.*  After arriving at the weigh station and

13   identifying Petitioner, a Border Patrol agent conducted a records check and determined that

14   Petitioner "[did] not possess lawful immigration status in the United States."  *Id.*  During

15   subsequent questioning, Petitioner admitted that he had entered the United States illegally.  *Id.*

16   Petitioner was thereafter arrested based on his immigration history, his noncompliance with

17   release conditions and court requirements, and his risk of absconding."  *See id.*; *see also*, *id.*, Ex.

18   4.

19       Petitioner was transported to NWIPC on the day of his arrest, where he currently remains.

20   *See* Melendez Decl., ¶ 12; Dkt. 1 at 3.

21                                **II.    DISCUSSION**

22       Federal courts have authority to grant writs of habeas corpus to individuals detained in

23   "violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

1    Here, Petitioner claims his re-detention constitutes a deprivation of liberty without due process of

2    law in violation of the Fifth Amendment to the United States Constitution. *See* Dkt. 1 at 9-10.

3    He argues that he was previously released on an order of recognizance, complied with the

4    conditions of his release, and was not provided written notice or a hearing prior to his re-

5    detention to determine whether his re-detention was justified. *See id.* at 5.

6        **A.    Statutory Basis for Detention.**

7        Respondents argue in their return that Petitioner is subject to mandatory detention under

8    8 U.S.C. § 1225(b) and is therefore lawfully detained. *See* Dkt. 5 at 6-8.

9        Section 1225(b) applies to "applicants for admission" to the United States, who are

10   defined as a noncitizen "present in the United States who has not been admitted or who arrives in

11   the United States. . . ." 8 U.S.C. § 1225(a)(1). Applicants for admission fall into two categories,

12   both of which are subject to mandatory detention.[2] *Jennings v. Rodriguez*, 583 U.S. 281, 287

13   (2018). Individuals detained under § 1225 can only be paroled into the United States "for urgent

14   humanitarian reasons or significant public benefit." *Id.* at 300 (quoting 8 U.S.C. §

15   1182(d)(5)(A)). In contrast, 8 U.S.C. § 1226(a) is broader than its counterpart and is the "default

16   rule" for noncitizens present in the United States who are arrested and placed in immigration

17   detention. *Id.* at 303. Section 1226(a) permits the government to release a detainee on bond

18   during the pendency of the detainee's removal proceedings. *Id.*

19       Respondents' claim that Petitioner is detained under § 1225(b) is refuted by the record.

20   Petitioner's OREC clearly states that "[i]n accordance with section 236 of the Immigration and

21

22       [2] Section 1225(b)(1) applies to individuals initially determined to be inadmissible due to fraud,
     misrepresentation, or a lack of valid documentation. Section 1225(b)(2) "serves as a catchall provision
23   that applies to all applicants for admission not covered by" § 1225(b)(1). *Jennings v. Rodriguez*, 583 U.S.
     281, 287 (2018).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 4

Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations . . . you are being released on your own recognizance[.]"[3]  Van Daley Decl., Ex 3 at 1.  The Court observes as well that an order of recognizance is issued when a detainee is released pursuant to § 1226.  *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase "release on recognizance" as another name for "conditional parole" under § 1226(a).").  Thus, the record makes clear that Petitioner was released pursuant to § 1226(a).  Moreover, as Respondents acknowledge, courts in this district have held that noncitizens already residing in the United States are subject to discretionary detention under Section 1226(a), *see, e.g., Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1335–36 (W.D. Wash. 2025).  Thus, this Court concludes that Petitioner's detention is not governed by 8 U.S.C. § 1225.

###    B.    Due Process

Respondents also argue in their return that Petitioner's detention comports with due process and that there is no statutory or regulatory requirement that a hearing be conducted prior to re-detention.  *See* Dkt. 5 at 7-10.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  It is well established that due process rights extend "to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."  *Id.* at 693.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' . . . interests within the meaning of the Due Process Clause of the Fifth

---

[3] INA § 236 is codified at 8 U.S.C. § 1226.

1    . . . Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental

2    requirement of due process is the opportunity to be heard 'at a meaningful time and in a

3    meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

4         While due process is flexible and adequate procedural protections can vary based on the

5    circumstances, *Mathews*, 424 U.S. at 334, courts look to the three-part test established in

6    *Mathews v. Eldridge* to determine what procedures suffice. The *Mathews* test balances three

7    factors:

8         First, the private interest that will be affected by the official action; second, the
          risk of an erroneous deprivation of such interest through the procedures used, and
9         the probable value, if any, of additional or substitute procedural safeguards; and
          finally, the Government's interest, including the function involved and the fiscal
10        and administrative burdens that the additional or substitute procedural
          requirement would entail.

11

12   *Id.* at 335. "In *Rodriguez Diaz v. Garland* [53 F.4th 1189 (9th Cir. 2022], the Ninth Circuit

13   assumed without deciding that *Mathews*' three-part test applies in 'the immigration detention

14   context[.]'" *E.A.T. – B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025)

15   (collecting cases employing the *Mathews* factors in similar immigration contexts). Petitioner

16   argues the same framework and principles apply here. *See* Dkt. 1 at 7-9.

17        Respondents acknowledge that courts have recently found that noncitizens released from

18   immigration detention have a protected liberty interest in remaining out of custody, and that

19   revocation of previously granted release requires a pre-deprivation hearing. Dkt. 5 at 9.

20   Respondents maintain, however, that a pre-deprivation hearing is not required here, emphasizing

21   the government's heightened interest in detaining non-citizens during the removal process. *See*

22   *id.* at 10-11. Respondents do not otherwise engage in any meaningful analysis of the *Mathews*

23   factors as applied to this case, nor do they offer any clear argument that the *Mathews* test is not

     properly employed here. Consistent with prior precedent, this Court deems the *Mathews* test

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 6

1  applicable in the context of this re-detention case, and will therefore address the three factors

2  below.

3      First, Petitioner has a constitutionally protected interest in his continued liberty.

4  Petitioner's interest in not being detained "is the most elemental of liberty interests[.]"  *Hamdi v.*

5  *Rumsfeld*, 542 U.S. 507, 529 (2004).  When Petitioner was released by DHS in March 2023, he

6  acquired a liberty interest protected by the Due Process Clause.  *See Doe v. Becerra*, 787 F.

7  Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("The Supreme Court has repeatedly recognized that

8  individuals who have been released from custody, even where such release is conditional, have a

9  liberty interest in their continued liberty."); *see also Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d

10  1130, 1136 (W.D. Wash. 2025).  The first *Mathews* factor weighs in Petitioner's favor.

11      Second, the circumstances of Petitioner's arrest underscore the high risk of erroneous

12  deprivation of his liberty absent a pre-detention hearing.  As previously noted, Petitioner asserts

13  that he complied with the conditions of his order of release and attended every ICE check-in.

14  Dkt. 1 at 5.  Respondents assert that Petitioner was re-detained "[b]ased on his immigration

15  status, prior failure to attend immigration court proceedings, and an assessed risk of absconding."

16  *See* Dkt. 5 at 3; *see also* Melendez Decl., ¶ 11.  In addition, there is a suggestion in the Record of

17  Deportable/Inadmissible Alien prepared at the time of Petitioner's arrest in December 2025 that

18  he was deemed by Border Patrol agents to have violated the conditions of his release not only by

19  failing to comply with immigration court requirements, but also by working in Montana.  *See*

20  Van Daley Decl., Ex. 2 at 3.  It appears the arresting Border Patrol agents concluded Petitioner

21  was a flight risk as a result of these alleged violations.  *See id.*

22      The record shows that Petitioner did, in fact, fail to appear for a hearing before the

23  immigration court in July 2023 and, as a result, the IJ ordered Petitioner be removed *in absentia*.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 7

1    Melendez Decl., ¶ 8.  However, shortly thereafter, Petitioner moved to reopen his removal

2    proceedings, and the motion was granted.  *Id.*, ¶ 9.  While failure to appear for a hearing as

3    directed would have constituted a violation of the conditions of Petitioner's OREC (*see* Van

4    Daley Decl., Ex. 3 at 1), the incident did not result in revocation of Petitioner's release.  It is

5    unclear why, almost two and a half years later, Border Patrol agents in Montana deemed this a

6    viable basis for returning Petitioner to custody when those involved in the incident in 2023

7    apparently saw no reason to revoke Petitioner's release.

8         Also unclear from the record is why Border Patrol agents apparently concluded Petitioner

9    had violated the conditions of his release by driving a commercial vehicle through the state of

10   Montana.  Nothing in Petitioner's OREC suggests that this type of employment was prohibited

11   (*see id.*), and the record demonstrates that Petitioner had in his possession at the time of his arrest

12   an Employment Authorization Document which should have been sufficient to allay any

13   concerns about the legitimacy of his employment in light of his immigration status.  Finally,

14   Respondents offer no explanation as to how the somewhat tenuous reasons offered to justify

15   Petitioner's re-detention gave rise to a reasonable inference that Petitioner constituted a flight

16   risk.

17        In sum, Petitioner's re-detention prior to a hearing in which factual questions regarding

18   his compliance with his OREC and his risk of flight could have been resolved maximized the

19   risk that his liberty interest would be erroneously deprived.  The second *Mathews* factor favors

20   Petitioner.

21        Finally, the government's countervailing interest in detaining Petitioner prior to a hearing

22   is minimal.  Respondents have an interest in ensuring a noncitizen appears at future immigration

23   proceedings and that a noncitizen does not pose a danger to the community.  *Zadvydas*, 533 U.S.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 8

at 690 (government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community").  While providing a hearing before re-detaining an individual would require expending resources (money and time), such costs are outweighed by the risk of erroneously depriving an individual of a significant liberty interest.  *See*, *e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").  Though requiring a pre-detention process in this case would present some administrative burden, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing effectively no pre-detention process—as Border Patrol did here—is constitutionally deficient.

In sum, all three *Mathews* factors weigh in Petitioner's favor and, thus, this Court finds Petitioner should be immediately released from custody.  Petitioner, in conjunction with his request for release from custody, asks that Respondents be prohibited from re-detaining him during the pendency of his removal proceedings without providing written notice and a hearing prior to re-detention at which Respondents would bear the burden of proving by clear and convincing evidence that he is a flight risk or a danger to the community, and that no alternatives to detention would mitigate those risks.  *See* Dkt. 1 at 10-11.

The Court concurs that, consistent with the requirements of due process, Respondents must provide written notice and a hearing before a neutral decisionmaker prior to any re-detention of Petitioner.  The Court also finds that Respondents bear the burden of proving by clear and convincing evidence that Petitioner is a flight risk or a danger to the community at any subsequent re-detention hearing.  *See Pinchi v. Noem*, 792 F. Supp. 3d 1012, 1038 (N.D. Cal. July 24, 2025) (Holding Petitioner may not be detained unless the government demonstrates at a

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 9

1   bond hearing, by clear and convincing evidence, she is a flight risk or a danger to the community

2   and that no conditions other than her detention would be sufficient to prevent such harms.).  To

3   the extent Petitioner requests that Respondents also be required to consider alternatives to

4   detention at any re-detention hearing, he fails to establish this additional procedural protection is

5   constitutionally required.  *See Martinez v. Clark*, 124 F.4th 775, 786 (9th Cir. 2024).

## III.    CONCLUSION

7          For the foregoing reasons, the Court GRANTS the habeas petition (Dkt. 1) and ORDERS

8   that Petitioner be RELEASED from immigration detention within 24 hours on conditions

9   consistent with those in place at the time of his re-detention.  Respondents shall file a

10  certification within 48 hours that Petitioner has been released.  The Court further ORDERS that

11  Petitioner shall not be re-detained without first being provided adequate notice and a hearing

12  before a neutral decisionmaker at which Respondents bear the burden of proof.  Finally, any fee

13  petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C.

14  § 2412.

15         Dated this 23rd day of February, 2026.

17                                             S. KATE VAUGHAN
18                                             United States Magistrate Judge

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 10